May it please the court. I'm Robert Jobe and I'm appearing today on behalf of the petitioner Kulwant Singh Gill. This case involves not one, but two flawed agency opinions. In the first, the immigration judge denied Mr. Gill's applications for asylum and withholding of removal. In doing so, she found that Mr. Gill had failed to establish past persecution. In making that judgment, she didn't reference any case law. She didn't reference the doctrine of imputed political opinion, but went on to conclude that he had failed to establish that the arrests and beatings that he had suffered failed to rise to the, or were not on account of a protected ground. Did Gill argue the doctrine of imputed political opinion before the IJ and BIA? Well, there were, there was no opening, opening statement or closing argument, Your Honor. But yes, in his asylum application, he checked the box for a political opinion. Political opinion? Yes, political opinion. And certainly before the board, he raised the argument of imputed political opinion in his, in his motion. Well, before the board, he asserted that he and his father were tortured for, quote, no other reason than being members of the Sikh religion, end of quote. That must have been the brief filed by his attorney. It was, and that to me is just a flat representation that allows for, I mean, that doesn't say it was imputed political opinion. Well, if you look to the notice of appeal. Oh, I know, I hate, I know it was in the notice of appeal, it was checked in the box, but when there's a flat representation about what your basis of your claim is, why can you fault the board for not taking him at face value? Well, I think you have to read that statement also in conjunction with the notice of appeal, because the notice of appeal says flat out that the immigration judge failed to take into account the doctrine of imputed political opinion. Probably because it wasn't pressed. Pardon me, Your Honor? Perhaps because it wasn't pressed to her. Well, you know, in these immigration proceedings before the immigration judge, imputed political opinion comes up every day. It's something that you don't normally have to argue in opening or closing statements. It's just one of those things that's accepted in immigration court, because it's a common, it's such a common argument that's made. But in this case, the immigration judge, this is a case that walks, talks, and smells like an imputed political opinion case. Well, okay. There is no reported decision that I'm aware of that would impute political opinion to someone whose identity is simply mistaken. That's right. Normally, the mistake is the authorities go after the petitioner mistakenly imputing to him a political opinion that somebody else has. That's not what I'm talking about. I'm talking about someone who has a political opinion to somebody with the same name and mistakenly thought he was he. That's right. Well, actually, the way I've been looking at it, which is somewhat different than how I, it seems as though if you just had mistaken identity without more, and the mistaken identity was of a different person, here you have, I hate to get into this debate, but here you have mistaken identity plus imputed political opinion, because the person he's being mistaken for is a militant and has a political opinion that's being imputed to this person based on that. So it's almost like a mistaken identity plus. That's exactly our position. I mean, there is no plus. It's always going to be true in a case of mistaken identity. They're going after somebody for a political opinion. No. I mean, for example, the government, I think today they presented a 28-J letter involving a case I think called Ramos-Vazquez. If you look at that case, there's no plus. It's just a case of mistaken identity. The man was shot in the head twice because a soldier mistook him for his father. But there's nothing in that case to suggest that the father was a militant. In this case, by contrast, we have a situation where somebody is affirmatively accused of being a calistani, a militant. Though under Singh and Ratnam and Blanco Lopez and Maldonado Cruz, under the law of this circuit, that is an imputation of political opinion. So here we have mistaken identity plus. And the question in this case... You don't even really need the mistaken identity. Precisely. Actually, I mean, that's why I'm looking at the case slightly differently than I think everybody else has been looking at. Because the mistaken identity is almost irrelevant to the fact that he was tortured because they believed he was a militant. I agree with that. But I think the bigger problem in this case is that the IJ's opinion doesn't have any analysis at all. We don't know what her thinking is in this case as to why this case doesn't fall within the doctrine of imputed political opinion. Is she just simply ignoring the doctrine? Or is she of the view that if it's a case of mistaken identity plus, as a matter of law, that does not constitute an imputation of political opinion? We don't know. No, her view was mistaken identity is not enough. Mistaken identity is not an enumerated... That seems to be her view as a matter of law. And I mean, I think the big question in this case is really one of remedy, frankly. Because on this issue of waiver, Your Honor, I mean, certainly I understand your point about the statement that was made by his former counsel to the Board of Immigration Appeals. But it seems to me the question is whether or not this issue of imputed political opinion has been waived. And it hasn't been because it was clearly raised before the Board. We prepared the Notice of Appeal. And then our client fired us. And he hired this other lawyer. And the other lawyer went off and filed this crazy brief. But in the Notice of Appeal that we filed, we clearly indicate that the immigration judge had erred by failing to address it. So it seems to me the big issue in this case is what do we do with a situation where we have an immigration judge opinion that's unclear? She seems to be saying as a matter of law that a case of mistaken identity cannot constitute imputed political opinion. And she doesn't cite any case law. And she doesn't even reference or grapple with the doctrine of imputed political opinion. Now, I think that this case is sort of like Thomas in terms of what the court should do. I think so, too. And that's really the big question. I mean, my mind is how much should be remanded? I think it's very much analogous to Thomas. Because in Thomas what happened is the immigration judge rendered an opinion that dealt with an account of race. But he didn't deal with social group. It goes up to the Board. The Board summarily affirms. So the Board doesn't deal with the social group question. The Supreme Court says, well, what this court should have done is clarify that family could be a social group. I know. And I think the Supreme Court interpreted the record incorrectly as well. I'm sure Judge Reimer doesn't agree. Perhaps you should educate Judge Ware about this case. You certainly are aware of it. No, no. I appreciate that. But I can look at that on my own. The question, quite frankly, that I have is whether or not this case takes on a different character because it's a persistent mistake. In other words, it is a case where the petitioner says, I'm not this person. The name is the same. And then five years later, some significant period later, he's again arrested under the same guise. And the authorities do not believe him. They don't believe that they are mistaken, obviously. And so it perhaps takes on a different character because they don't acknowledge that there is a mistake. And it looks as though the potential for them to continue to make that assumption is available. And I think that's relevant, but I don't think that's relevant to the question that's presented to the court at this point. That's going to be relevant on remand in terms of whether the government can rebut the presumption that arises of future persecution, because we're going to be arguing that the government is persistently making this mistake. And thus the fact that they released him the first time, that doesn't rebut the presumption of harm. But at this point, we're focused on the question of whether or not the past persecution was, at least in part, on account of an imputed political opinion. And the problem is that the judge just didn't grapple with that. And under Thomas, I think the appropriate resolution of this case is for the court to say, well, there's no law that says that a case of mistaken identity as a matter of law cannot fall within the ambit of imputed political opinion, and then remand this case so that the immigration judge can then apply that principle to the facts of this case, because she really didn't grapple with the facts of this case. And I'll reserve the balance of my time. MS. PADDOCK. Surely. Ms. Paddock. MS. PADDOCK. Good morning. Stacey Paddock on behalf of Respondent Attorney General. Respondent Attorney General believes this case is supported by substantial evidence in the record, in that the immigration judge found that Petitioner failed to prove past persecution on account of an imputed political opinion. Petitioner, and the evidence of record does not compel a contrary conclusion. Petitioner admitted that the police sought him in 1992 because they thought he was the other Mr. Gill. The other Mr. Gill is someone he went to grade school with, who in the village is a known terrorist, militant, who apparently was harboring weapons, had a group of other militants, the record shows that when the police were interrogating Petitioner, they never asked him about his political beliefs, whether he was a Sikh, yet nothing related to the Petitioner in this case. Merely they asked him information related to the other Mr. Gill. Where are you hiding the weapons? Where are your colleagues? Items of that nature. In his defense, he tried to explain he was the Mr. Gill that's the hockey player. But they never addressed what he, whether any political beliefs were imputed to him. And that's why Respondent contends that this decision of the immigration judge, that he failed to prove the on-account of ground, whether, you know, assuming for purposes of argument that the imputed political opinion, argument was preserved and that they did not fail to exhaust it, that they just did not meet the on-account of grounds for persecution. Would the real reputed militant meet the ground? He would have a strong case. You know, looking at that, we don't know his circumstances, but his situation is more closely aligned of, there would be no mistaken identity. It would have been that they were looking for him as a terrorist, possibly for criminal activities. Petitioner testified that this other individual with the same name has killed people. It would be a completely different analysis for the terrorist Mr. Singh Gill, because that would be someone who's known to have violated laws, was a known terrorist, killed people, harboring weapons, so on and so forth. So that's a different situation. I believe that's what Judge Wardlaw, I believe her concerns might be related to sort of mistaken identity, plus in the sense of this person is a known terrorist, they're imputing the political opinions and activities to petitioner, when in fact, when you read the transcript and his statements related to why they were detaining him and the questions they asked him, none of it relate to actually whether they imputed the political opinions or activities. The IJ notes in the IJ's opinion that while he was being beaten, they were accusing him of being a militant and harboring the weapons and all of that. So the police perceived him to be a militant, and isn't that what imputed political opinion is? I think we can actually draw a line differentiating the circumstances of this case from other cases of imputed political opinion. In this case, yes, they were interrogating him. You're the militant we're looking for, you're the terrorist, you're the murderer. Confess, tell us where the weapons are, confess, tell us where your colleagues are. And in his defense, he was explaining he was the hockey player, he wasn't this individual. Never did the police or petitioner never explained or admitted or even raised the issue that they went beyond looking for this other person and attributing just identity of this other person. Well, maybe we ought to take this opportunity to expand the doctrine of imputed political opinion. Because it seems to me that you can impute it by knowing you have the right person and assuming they have a belief, or have the wrong person and assume they have a belief, but the effect is the same on the person. In this case, Judge Ware, once they realized, or once the father and the village official showed up at the police station with money and an explanation corroborating that he was the hockey player, they immediately released... But do we know whether that was because of the money or because they realized they had the wrong person? We don't know. Whether it was because of the money or they realized the wrong person, meaning they had the hockey player, as opposed to... Can the record show that they realized that there were two and that he wasn't lying and that indeed there was only one guilt? There's nothing related to what the police thought. That was set for, you know, it's clear in the record, you know, assuming everything Petitioner presented was credible, that there were two individuals. They lived in a small village of 110 people, and there were two people with the exact same name that lived approximately located to each other. And that in 92, when he was picked up, the other Mr. Sengill was in the village and they were looking for him. In 1997, Petitioner's statement in the record discusses that the other Mr. Sengill had returned to the village and was apparently... The police had been hunting for him and he was located in the field next to Petitioner's parents' home. And that is most likely why they approached Petitioner's parents' home looking for the other Mr. Sengill, because they lost him in the field next to his home. Between 92 and 90, pardon me, 95. That's an assumption on your part, because why would you take the father if that's the case? Well, facts are there to demonstrate... There was an incident in 92. Nothing else occurred to Petitioner or the family until 95, which was the night that Petitioner in his declaration stated the other Sengill was in town, was being pursued by police, and was in the field located next to Petitioner's home. Since 1998, a year after Petitioner left, there's nothing in the record, nothing has ever happened to family since then. You've got brothers, sister, parents, wife and child living in the family home, working on the family farm, nothing related. Police have not pursued them. Doesn't that cut both ways? It shows that they've stopped pursuing because the one they're really after is now here? Or they caught the other one. Well, if that's in the record, I'd be happy to consider that. Can I ask you a question? Did, on this record, did the IJ actually rule on whether mistaken identity plus the imputed political opinion would equal an enumerated ground? No. The immigration judge solely found that this was a case of mistaken identity. Petitioner failed to meet any burden of proof that this was anything other than mistaken identity. Which is not a protected ground. Okay. The IJ didn't consider the question, and then we have this troubling summary affirmance procedure where you can't tell exactly what the BIA did, except in this case, didn't the BIA say that it reversed the IJ's adverse credibility? Similar to the Kumar decision, which I read your dissent in. This is a, the BIA affirmed the disposition, except for the adverse credibility finding. And this case, I believe, is different than the Kumar decision, because in our case here, the immigration judge actually made an alternative finding and stated twice in her decision that even if we assume petitioner to be credible, all of the facts don't prove that he was harmed on account of a protected ground, and therefore did not establish persecution. So, and actually that's twice in the immigration judge's decision, so there was sort of... The only ground she was considering was mistaken identity, which I would agree, because mistaken identity doesn't necessarily involve an enumerated ground unless it does. Well, I believe the immigration judge found that there was, you know, the petitioner did, and my time is up, can I finish the thought? Thank you. Immigration judge, pardon me, petitioner raised political opinion, checked the box in the asylum application. The immigration judge found that all of the proof did not rise to the level of showing any political opinion, and that this was solely a case of mistaken identity, and the evidence of record doesn't compel a contrary conclusion. Thank you. I think the biggest disagreement that we have here is whether this is really a question of fact or a question of law. And in our view, and I think this is set forth a little bit on page 160 of the transcript, in our view, the judge was of the view that if it's a case of mistaken identity, it necessarily cannot constitute persecution on account of political opinion. When Mr. Gill begins to testify about the arrest that he suffered in 1992, the judge instructs counsel, just try to keep it short, okay? Because I think in his own statement, in his own testimony, it seems like this is a case of mistaken identity in any event. She had her mind made up this was a case of mistaken identity, that resolves the matter, and I think that's the legal error that she committed here. And her analysis in the decision doesn't suggest anything to the contrary. And what's troubling here is we don't have the agency's perspective on this. We don't have a board opinion. We know that the immigration judge can't state the agency's position with regard to this legal question. That's why we think it has to go back at a minimum so that the board can articulate what its position is on this question of law. Thank you.
judges: Rymer, Wardlaw, Ware